IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| MICHAEL BRADY,<br><br>Plaintiff,<br><br>vs.<br><br>DEVLIN CONSULTING, AND SAGILITY LLC,<br><br>Defendants, | ) | 2:23-CV-02119-MJH |

OPINION

Plaintiff, Michael Brady, brought the within action for Breach of Contract (Count I) against Defendants, Devlin Consulting, Sagility LLC., and Sagility Payment Integrity Solutions, LLC, alleging that Defendants breached their Marketing Sales Agreement (MSA) by failing to pay commission payments to Mr. Brady. (ECF No. 48). Mr. Brady has voluntarily dismissed his claim against Sagility, LLC. (ECF No. 73).

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 58). Mr. Brady has also moved for partial summary judgment and a declaration that Devlin Consulting breached the MSA. (ECF No. 60).

Following consideration of Defendants' Motion for Summary Judgment (ECF No. 58), Mr. Brady's Motion for Partial Summary Judgment (ECF No. 60), the parties concise statements of material facts and appendices (ECF Nos. 59, 61, 63, 69, 71, 72, 75, 80, 81, 82, 83, 87, and 92), the respective briefs (ECF Nos. 62, 64, 84, 85, 86, 88, and 89), and for the following reasons, Defendants' Motion will be granted, and Mr. Brady's Partial Motion for Summary Judgment will be denied.

I. Relevant Background

This action arises from an alleged breach of an October 29, 2009 Marketing Services Agreement ("MSA") between Defendant, Devlin Consulting, Inc. ("DCI"), and Plaintiff, Michael Brady. At the time of the MSA's execution, DCI provided cost recovery services for healthcare payors and was paid via contingency fee, based upon the amounts DCI recovered for its clients. Under the MSA, DCI engaged Mr. Brady to solicit prospective clients with whom DCI had no previous contacts in order to secure them as clients for DCI's cost recovery services.

On or about January 17, 2012, Comprehensive Health Management, Inc., doing business as WellCare ("WellCare"), entered into a Services Agreement with Devlin Consulting ("WellCare Services Agreement[1]"), whereby Devlin Consulting agreed to provide its One Source audit program to identify recoverable overpayments to hospitals and other healthcare providers. (ECF No. 88 at ¶ 18). Comprehensive Health Management, Inc. was a subsidiary of WellCare Health Plans, Inc. at that time. (ECF No. 81). Mr. Brady was paid by DCI for commissions due under the WellCare Services Agreement from January 29, 2013 through March 13, 2020. *Id.* at ¶ 23.

On March 27, 2019, Centene Corporation announced a mergerwith WellCare Health Plans, Inc. Mr. Devlin on behalf of DCI informed Mr. Brady in March of 2019 that WellCare Health Plans, Inc. would no longer exist after the Merger, such that DCI would need to sell into Centene in order to get new approval through Centene to perform services for WellCare Health Plans, Inc., as a wholly owned subsidiary of Centene. In January, 2020, after the Merger was complete, Mr. Devlin again advised Mr. Brady by telephone that Mr. Brady was no longer

[1] While the parties have named this the WellCare Services Agreement. WellCare Health Plans, Inc. was not a party to and did not execute the contract. (ECF No. 75-1).

entitled to any commissions under the 2012 WellCare Agreement moving forward, because there was no longer any WellCare company.

Mr. Brady has asserted that DCI breached the MSA, because it has a continuing obligation to pay Mr. Brady for WellCare commissions post-merger until such time as Defendants cease their relationship with Centene/WellCare. Defendants maintain that Mr. Brady was no longer entitled to commissions under the MSA, because WellCare Health Plans, Inc. no longer existed as a matter of law. Mr. Brady also contends that the WellCare Services Agreement between DCI and Comprehensive Health Management, Inc. d/b/a WellCare, supports a continuing obligation for DCI to pay commissions under the MSA.

Finally, Defendants contend that any dispute on commissions with Mr. Brady was resolved through an accord and satisfaction pursuant to a July 2021 remitted and retained payment to Mr. Brady. The parties have cross-moved for summary judgment on these issues.

## II. Relevant Legal Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its

function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

III. Discussion

A. Entitlement to Commissions

Both parties cross-move for summary judgment on whether, in January of 2020, WellCare Health Plans, Inc. ceased to exist after its merger with Centene. Defendants contend that, under Delaware Corporate law, WellCare Health Plans, Inc. did not continue to exist after the merger with Centene. Defendants conclude that Mr. Brady was no longer entitled to any commissions under the WellCare Service Agreement following the Centene merger. Therefore, Defendants maintain that Mr. Brady's breach of contract claim, that he was owed continued commissions, fails as a matter of law.

Mr. Brady asserts that WellCare Health Plans, Inc. survived and continued to exist after Centene completed its merger with WellCare Health Plans, Inc. Mr. Brady also maintains that the WellCare Service Agreement was between Comprehensive Health Management, Inc., a Florida corporation, and Devlin Consulting. (ECF No. 88 at ¶ 18). Mr. Brady contends that, even after Centene closed on its acquisition of WellCare Health Plans, Inc., Comprehensive Health

Management, Inc. continued to exist, albeit as a subsidiary of Centene Corporation. (ECF No. 81).

1. Entity Analysis

Because Centene and WellCare Health Plans, Inc. are Delaware corporations, Delaware corporate law applies to their merger. 8 Del. C. § 259 governs the status of constituent corporations, i.e., corporations entering mergers, and surviving corporations. Section 259 provides:

> When any merger or consolidation shall have become effective under this chapter, … the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations.

*Id*. at § 259(a); *see also Beals v. Washington International, Inc.*, 386 A.2d 1156, 1161 (Del. Ch. 1978) ("Since by statute, corporate existence is terminated on the date of merger, a corporation ceases to exist on merger for all purposes, including service of process, unless the legislature provides otherwise.") (internal citation omitted).

Here, on March 26, 2019, Centene and WellCare Health Plans, Inc. entered into an Agreement and Plan of Merger, wherein Centene would become the new corporation. (ECF No. 61-8). When the merger closed in January of 2020 (ECF No. 88 at ¶ 25), WellCare Health Plans, Inc. terminated under Delaware corporate law. Post-merger, WellCare Health Plans, Inc. became a subsidiary of parent company Centene.

As regards Comprehensive Health Management, Inc., on or about January 17, 2012, Comprehensive Health Management, Inc., doing business as WellCare, entered into the WellCare Services Agreement with Devlin Consulting. (ECF No. 88 at ¶ 18). The WellCare Services Agreement was the lone client that Mr. Brady secured for Devlin Consulting. At that time,

Comprehensive Health Management, Inc was a subsidiary of WellCare Health Plans, Inc.; and, following the Centene merger, Comprehensive Health Management, Inc. became a subsidiary of parent company Centene. (ECF No. 81). In addition, following the Centene Merger, Comprehensive Health Management, Inc., a Florida corporation, converted to a limited liability company, Comprehensive Health Management, LLC.

As regards the 2012 WellCare Services Agreement, it provides, in relevant part as follows:

> No Assignment; Binding Effect. Neither this Agreement nor any right, interest or obligation hereunder may be assigned (by operation of law or otherwise) by any party without the prior written consent of the other party and any attempt to do so will be void; provided, however that the Company [Comprehensive Health Management, Inc.] may, upon notice to the Vendor [Devlin Consulting] but without being obligated to obtain Vendor's [Devlin Consulting's] consent, assign this Agreement or any its rights, interests or obligations hereunder to an affiliate of the Company [Comprehensive Health Management, Inc.] Subject to the preceding sentence, this Agreement is binding upon, inures to the benefit of and is enforceable by the parties hereto and their respective successors or assigns.

(ECF No. 75-1 at p. 6). Mr. Brady has set forth no evidence to show that Devlin Consulting or Comprehensive Health Management, Inc. complied with the terms of this provision, requiring written consent from Comprehensive Health Management, Inc. and Devlin Consulting to effect any assignment to Centene to trigger any continuation of the 2012 WellCare Services Agreement following the merger. Therefore, by virtue of the terms of 2012 WellCare Services Agreement, Mr. Brady does not present any genuine issue of material fact to establish that Devlin Consulting, Comprehensive Health Management, LLC, Comprehensive Health Management, Inc., WellCare Health Plans, Inc., or Centene had any continuing contract relationship under the 2012 WellCare Services Agreement following the 2020 merger.

2. Devlin's Obligations to Mr. Brady

As regards Mr. Brady's entitlement to commission payments under the 2009 MSA after the January of 2020 merger, Mr. Brady's entitlement to commissions is defined as follows:

> Regardless of who terminates the Agreement, all recurring revenue generated as a result of Contractor's [Mr. Brady's] efforts will continue to generate fees for Contractor [Mr. Brady], as defined in Schedule A: Fees, as long as the client in question continues a business relationship with Developer [Devlin Consulting]. Compensation will continue to be earned and paid to Contractor [Mr. Brady] as outlined in this agreement. These contracts will continue and will not be made void by any change in ownership of Developer [Devlin Consulting's] organization.

(ECF No. 88 at ¶ 12).

Here, the client secured by Mr. Brady was Comprehensive Health Plan, Inc. As of the merger in January 2020 and as of the corporate conversion in 2022, the business relationships between Devlin and Comprehensive Health Management, Inc. d/b/a WellCare, were materially changed. Mr. Devlin testified that any post-merger relationship for DCI services required efforts by Devlin Consulting to get approval from Centene as its new client. *Id*. at pp. 38-39. Specifically, Mr. Devlin stated: "[s]o the only way we could continue to do any of the business with what was now the parent company, Centene, was if we made a new sale into the Centene payment integrity department." *Id*. at pp. 42-43. There is no evidence to support the creation of any agreement to assign or transfer the 2012 WellCare Services Agreement from Comprehensive Health Management, Inc. to Centene or to any other entity. Mr. Devlin further testified that, after the Centene merger, all decisions were made by the Centene payment integrity department. Post-merger, none of Centene's subsidiaries, WellCare Health Plan, Inc., Comprehensive Health Plan, Inc., or Comprehensive Health Plan, LLC's, respective payment integrity departments had any delegated authority. (ECF No. 67-8 at p. 38). Therefore, absent evidence of compliance with the above-referenced provisions of each of the WellCare Services Agreement and the MSA, the WellCare Services Agreement and the client business relationship between DCI and

Comprehensive Health Management, Inc. d/b/a WellCare terminated as of the 2020 merger. The Post-2020 business relationship was thereafter between Centene and DCI. Absent continuation of the business relationship between DCI and its client, Comprehensive Health Plan, Inc. d/b/a WellCare, the 2009 MSA contract no longer provided for any further payment to Mr. Brady.

As regards efforts of Mr. Brady, once he was advised of the proposed merger, Mr. Devlin testified:

> We gave [Mr. Brady] a year to sell into [Centene], [Mr. Brady] never made any attempt even to contact anyone at Centene or WellCare payment integrity in that year. So when the acquisition acquired, [Devlin Consulting] took the initiative to sell into Centene.

*Id*. at p. 43. The record further reflects that, since 2020, any revenues received by Devlin Consulting were paid by Centene. (ECF No. 61-17).

Mr. Brady has presented no contrary evidence to demonstrate any issue of fact that his "client," secured in 2012, Comprehensive Health Plan, Inc., continued a business relationship with Devlin Consulting after the 2020 Centene merger. Instead, the uncontradicted evidence establishes that Mr. Brady made no efforts for the business relationship to continue post-merger. Devlin Consulting had to establish the new business relationship with Centene, a new parent company that was then exercising control over its subsidiaries, WellCare Health Plans, Inc. and Comprehensive Health Plans, Inc. Therefore, Mr. Brady has produced no evidence to establish any genuine issues of material fact that Devlin Consulting received any revenue from Centene as a result of the 2012 WellCare Services Agreement, or that Mr. Brady's efforts established Centene's business relationship with Devlin Consulting, or that his efforts resulted in any agreement between Devlin and Centene to establish any post-January 2020 entitlement to commissions under the 2009 MSA.

Furthermore, while the language of the MSA expressly provided for continuing obligations for payment in the event Devlin Consulting changed ownership, there is no express MSA provision to obligate commission payments for any change in a corporate entity client. Thus, the MSA itself does not obligate commission payments once the client corporation, Comprehensive Health Plan, Inc., d/b/a WellCare because a subsidiary through merger.

Accordingly, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendants and against Plaintiff as to the Breach of Contract claim. In addition, Plaintiff's Motion for Partial Summary Judgment as to Plaintiffs claim for Breach of Contract and Declaratory Judgment will be denied.

B. Accord and Satisfaction

Based upon the discussion above, which disposes of Plaintiff's breach of contract claim. Defendants' Motion for Summary Judgment on their accord and satisfaction defense is moot.

IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendants and against Plaintiff as to the Breach of Contract claim. In addition, Plaintiff's Motion for Partial Summary Judgment as to Plaintiff's claim for Breach of Contract and Declaratory Judgment will be denied. Defendants' Motion for Summary Judgment on their accord and satisfaction defense is moot.

A separate order will follow.

DATED this 30th day of October 2026.

BY THE COURT:

Marilyn J. Horan

MARILYN J. HORAN
United States District Judge